**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SINAI CENTER FOR REHABILITATION AND HEALTHCARE, LLC,

   Plaintiff,

   v.

NEW JERSEY DEPARTMENT OF HEALTH and KAITLAN BASTON *in her official capacity as the Commissioner for the New Jersey Department of Health*,

   Defendants.

Civil Action No. 24-9465 (ZNQ) (RLS)

**OPINION**

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by the New Jersey Department of Health ("DOH") and Commissioner Kaitlan Baston ("Commissioner") (collectively, "Defendants"). ("Motion," ECF No. 14; *see* "Moving Br.", ECF No. 14-1.) Plaintiff Sinai Center for Rehabilitation and Healthcare, LLC ("Sinai") filed opposition ("Opp'n Br.", ECF No. 16), to which Defendants replied (ECF No. 17).

  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion is both **GRANTED IN PART** and **DENIED IN PART.**

# I.    BACKGROUND AND PROCEDURAL HISTORY

## A.    FACTUAL BACKGROUND [1]

Sinai seeks a declaration that New Jersey law, N.J.S.A. 26:2H-128 and N.J.A.C. 8:39-4.1, violates the Supremacy Clause of the United States Constitution.  (Opp'n Br. at 1; *see generally* Compl.)

### 1.    The Parties

Sinai is a limited liability corporation that operates an accredited skilled nursing facility ("SNF") and provides skilled nursing care for individuals with medical issues that require around-the-clock care.  (Compl. ¶¶ 3–4.)

DOH is an official department of the State of New Jersey.  (*Id.* ¶ 7.)  DOH aims to improve the "'well-being and quality of life for all New Jerseyans' by 'providing essential services and implementing comprehensive measures that prioritize public health.'"  (*Id.* ¶ 8.)  DOH also drafts, implements, and enforces various regulations that apply to skilled nursing facilities such as Sinai.  (*Id.* ¶ 9.)

Baston was the Commissioner of DOH at the time the Motion was filed.  The Commissioner oversees DOH and is responsible for all agency operations.  (Compl. ¶ 10.)

### 2.    BOP and NaphCare

The Bureau of Prisons ("BOP") is responsible for the custody and care of inmates in federal custody.  (*Id.* ¶ 11.)  Under 18 U.S.C. § 4042, BOP: (1) manages and regulates all Federal penal and correctional institutions; (2) provides suitable quarters, safekeeping, care, and subsistence for all persons charged with or convicted of offenses against the United States or held as witnesses; and (3) protects, instructs, and disciplines all persons charged with or convicted of offenses against

---

[1] For the purposes of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

the United States.  (*Id.*)  Pursuant to 18 U.S.C. § 4042, BOP is required to supervise inmates undergoing medical care at an external medical facility in accordance with rights afforded to such inmates under the Fifth and Eighth Amendments to the United States Constitution.  (*Id.* ¶ 15.)

BOP has broad authority to enter into contracts with independent contractors to provide medical care that BOP cannot provide in its own facilities.  (*Id.* ¶ 13.)  NaphCare, Inc. ("NaphCare"), a federal contractor, entered into an agreement with BOP to act as its third-party administrator of medical services for federal inmates under BOP supervision.  (*Id.* ¶ 17.) NaphCare is the largest third-party administrator for BOP, and contracts with 47 states to provide post-acute care to BOP inmate patients.  (*Id.* ¶¶ 18–19.)

### 3.    The Sinai-NaphCare Contract

On or around June 18, 2024, NaphCare and Sinai entered into an agreement (the "Contract") wherein Sinai agreed to provide post-acute and rehabilitative care for federal inmates. (*Id.* ¶ 22.)  Shortly thereafter, NaphCare and BOP transferred 11 inmate patients from Metropolitan Detention Center Brooklyn ("MDC Brooklyn") to Sinai so that they may receive post-acute and rehabilitative care.  (*Id.* ¶ 24.)  During the relevant time period Sinai provided in-patient, skilled nursing care to approximately 390 non-inmate patients, the inmate patients constituted less than three percent of Sinai's total patient population.  (*Id.* ¶¶ 26–27.)

Pursuant to the terms of the Contract, Sinai was required to adhere to the following conditions:

- Maintain confidentiality of patient records;

- Register inmate patients as "confidential";

- Limit discussions and interactions with the inmate patient to "the consult or treatment being performed for the benefit of the BOP inmate patient"; and

- Restrict all patient medical information to authorized individuals.

(*Id.* ¶ 23.)  Sinai was not required, nor did it bill or receive any funds or payments from Medicare or Medicaid in connection with the inmate patients.  (*Id.* ¶¶ 25, 32.)

4.    DOH's Investigation and Action at Sinai

DOH contacted Sinai almost immediately after the federal inmate patients arrived at the facility.  (*Id.* ¶ 28.)  On July 3, 2024, DOH supervisor Christine Farfalla requested the names of the inmate patients and forwarded a 2016 Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS") memorandum titled, "Guidance to Surveyors on Federal Requirements for Providing Services to Justice Involved Individuals" (the "CMS Memo"). (*Id.* ¶ 29.)  The CMS Memo states that "BOP is responsible for the payment of medical services being provided to patients [in BOP custody]."  (*Id.* ¶ 34.)

The CMS Memo provides SNF-specific guidance.  (*Id.* ¶ 35.)  Specifically, the CMS Memo notes that:

> SNFs . . . as residential environments, must permit residents to have autonomy and choice, *to the maximum extent practicable* regarding how they wish to live their everyday lives and receive care. . . . *Facilities* cannot require prospective residents to give up their rights as a requirement for admission[.]

(*Id.*) (emphasis in original.)

The CMS Memo also discusses provisions applicable in other care settings, like hospitals and nursing homes.  (*Id.* ¶¶ 35–36.)  As to hospitals, the CMS Memo explains:

> A justice involved individual who has been brought to the hospital . . . and who simultaneously remains in the custody of the [Department of Corrections] or law enforcement personnel, *may be subject to security measures imposed by such personnel, such as physical restraint*.  In order to maintain custody of the individual, the [Department of Corrections]/law enforcement personnel must be physically present with the individual at all times.  When enforcement personnel impose security measures, such as the use of restraint, those security measures are not governed by the

4

> [Conditions of Participation], as long as the hospital does not participate in such measures.
>
> . . .
>
> The use of handcuffs, manacles, shackles, other chain-type restraint devices, or other restrictive devices applied by non-hospital employed or contracted law enforcement officials for custody, detention, and public safety reasons are not governed by this rule. The use of such devices are considered law enforcement restraint devices and would not be considered safe, appropriate health care restraint interventions for use by hospital staff to restrain patients. The law enforcement officers who maintain custody and direct supervision of their prisoner (the hospital's patient) are responsible for the use, application, and monitoring of these restrictive devices in accordance with Federal and State law.

(*Id.* ¶ 36.)

Thereafter, from July 11, 2024 through July 15, 2024, staff from DOH's Health Facility, Survey and Field Operations ("HFS&FO") unit conducted an inspection at Sinai after receiving a complaint related to the inmate patients. (*Id.* ¶ 47.) During the inspection, HFS&FO staff "verbally threatened Sinai that they intended to petition to revoke Sinai's Medicaid/Medicare licensure and ability to bill for services to Medicaid and Medicare patients." (*Id.* ¶ 50.) Alarmed, Sinai "cooperated" during the investigation and "sought clarification" pertaining to the CMS Memo. (*Id.* ¶ 48.) During the investigation, the United States Marshal Service informed HFS&FO staff that BOP "placed all of the security restrictions on the federal inmate patients, not Sinai." (*Id.* ¶ 52.)

HFS&FO staff determined that "no BOP inmate patient suffered any harm." (*Id.* ¶ 54.) Additionally, DOH "did not make any finding that the use of physical restraints on the BOP inmate patients were used for discipline or convenience." (*Id.* ¶ 62.) Despite these findings, HFS&FO staff "speculated that the . . . inmate patients might suffer serious physical or psychosocial harm in the future." (*Id.* ¶ 55.) Nevertheless, on July 23, 2024, DOH formally notified Sinai that it was pursuing enforcement action against Sinai in accordance with N.J.A.C. 8:43E-3.1 (Enforcement

Remedies Available) and 3.6 (Curtailment of Admissions). (*Id.* ¶ 57.) DOH ordered Sinai to "ensure that the 11 BOP inmate[] patients were provided the same rights as all other [Sinai residents]," including "removing all security measures put into place by the BOP." (*Id.* ¶¶ 63–64.) DOH's order also demanded Sinai cease admitting new BOP inmate patients and imposed a monetary penalty for each resident admitted to the facility in violation of the order. (*Id.* ¶ 66.)

As a result of DOH's order, Sinai, "under duress and protest," was forced to discharge all 11 BOP patients as of July 26, 2024. (*Id.* ¶ 70.)

### B.    PROCEDURAL HISTORY

On September 25, 2024, Sinai filed its Complaint against Defendants. (ECF No. 1.) The Complaint asserts claims under 42 U.S.C. § 1983 based on federal preemption of state law (Count I), as well as violations of the Intergovernmental Immunity and Supremacy Clause (Count II) and the Equal Protection Clause (Count III). Defendants filed a letter on January 9, 2025 requesting a pre-motion conference. (ECF No. 9.) Sinai responded to Defendants' letter on January 17, 2025. (ECF No. 10.) The Court then issued a text order waiving the pre-motion conference and permitting Defendants to file a motion to dismiss. (ECF No. 11.) Defendants submitted their Motion to Dismiss on February 21, 2025. (ECF No. 14.)

## II.    SUBJECT MATTER JURISDICTION

The Court exercises federal question jurisdiction over Sinai's claims pursuant to 28 U.S.C. § 1331.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the Defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss

pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court

must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id*. (alteration in original)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of

plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable

to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).

The court, however, may ignore legal conclusions or factually unsupported accusations that merely

state the Defendants unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550

U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are

sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211

(quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the

reasonable inference that the Defendant is liable for the misconduct alleged." *Id*. at 210 (quoting

*Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "Defendant bears the burden of showing

that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)

(citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.    <u>DISCUSSION</u>

Defendants raise several grounds for dismissing the claims against them. First, Defendants

assert that the Eleventh Amendment bars Plaintiff's claims against both DOH and the Acting

Commissioner. Second, Defendants claim that dismissal is warranted for failure to join necessary

and proper parties. Third, Defendants argue that this action is precluded because of Sinai's failure

to appeal DOH's administrative determination. Fourth, Defendants argue that Sinai both lacks

standing to assert and fails to state an Equal Protection Claim.  Fifth, Defendants argue that Plaintiff fails to state a valid claim for violation of the Intergovernmental Immunity Clause.  Sixth, Defendants argue that Plaintiff cannot overcome the presumption against preemption.  The Court will address each argument in turn.

### A.    ELEVENTH AMENDMENT SOVEREIGN IMMUNITY

Defendants move to dismiss the Complaint based on Eleventh Amendment sovereign immunity.  (Moving Br. at 9–11.)  Defendants argue that the Eleventh Amendment bars: (1) all claims against DOH; and (2) certain claims against the Commissioner.  (*Id.*)

### 1.    DOH

It is well established that "[s]tate governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment." [2] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 253 (3d Cir. 2010).  "The Supreme Court extended the Eleventh Amendment's reach to suits by in-state plaintiffs, thus barring all private suits against non-consenting States in federal court." *Lombardo v. Pa. Dep't of Public Welfare*, 540 F.3d 190, 194 (3d Cir. 2008).  Such immunity "extends to state agencies and departments." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001).  As a result, state sovereign immunity under the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Wright v. N.J. Dep't of Educ.*, 115 F. Sup. 3d 490, 494 (D.N.J. 2015).

The Third Circuit has long held that DOH is an arm of the State of New Jersey for sovereign immunity purposes.  *See, e.g., Aerated Prod. Co. v. Dep't of Health*, 159 F.2d 851, 853 (3d Cir. 1947) ("The Department [of Health] is a part of the executive branch of the New Jersey

---

[2] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Government. . . . [P]laintiff's suit against the Department is prohibited by the Eleventh Amendment."); *Benton v. Stanzione*, Civ. No. 22-1476, 2024 WL 4182565, at *3–4 (D.N.J. Sept. 13, 2024); *Worthy v. N.J. Dep't of Health*, Civ. No. 18-17346, 2023 WL 6307467, at *11 (D.N.J. Sept. 28, 2023) ("NJDOH, as an arm of the State of New Jersey, is entitled to Eleventh Amendment sovereign immunity."); *Rouse v. N.J. HHS*, Civ. No. 15-1511, 2015 WL 5996324, at *2 (D.N.J. Oct. 13, 2015) (DOH is a "'principal department' within the State's 'Executive Branch'" (citing N.J.S.A. 30:1-2)); *Mercer Cnty. Child. Med. Daycare, LLC v. O'Dowd*, Civ. No. 13-1436, 2014 WL 546346, at *3 (D.N.J. Feb. 7, 2014); *Rahman v. Taylor*, Civ. No. 10-367, 2010 WL 2178938, at *6 (D.N.J. May 27, 2010).

Consequently, DOH is immune from suit under the Eleventh Amendment. All of Plaintiff's claims against DOH are thus dismissed without prejudice. *See Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (holding that dismissal based on Eleventh Amendment immunity is a "threshold, nonmerits issue" and should be without prejudice).[3]

2.    Commissioner

Three narrowly circumscribed exceptions have been established to limit the scope of the Eleventh Amendment: (1) congressional abrogation; (2) state waiver; and (3) suits against individual state officers for prospective relief to end an ongoing violation of federal law. *MCI Telecomm. Corp.*, 271 F.3d at 503. Sinai does not argue that Congress has abrogated the Eleventh Amendment in this context. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996) (finding that Congress may abrogate Eleventh Amendment immunity if it has "unequivocally expresse[d] its intent to" do so and acted "pursuant to a valid exercise of power"); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (citing *Fitzpatrick v. Bitzer*,

---

[3] Under the circumstances, the Court finds that further amendment to claims against DOH would be futile. Accordingly, leave will not be granted to further amend these claims.

427 U.S. 445 (1976)).  Nor is there any indication that the State waived sovereign immunity.  *Coll. Sav. Bank*, 527 U.S. at 670 (citing *Clark v. Barnard*, 108 U.S. 436 (1883)).  Instead, Sinai sues the Commissioner seeking relief from an ongoing violation of federal law.

The doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), dictates that a plaintiff may bring a suit against state officials—notwithstanding the Eleventh Amendment's jurisdictional bar—when the plaintiff seeks prospective injunctive relief to end a continuing violation of federal law.  *Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Lab. & Indus.*, 985 F.3d 189, 193 (3d Cir. 2021).  *Ex Parte Young* is based on the theory that a state officer has no authority to violate federal law and thus, when the official does so, the official "is stripped of his official or representative character and becomes subject to the consequences of his individual conduct."  *MCI Telecomm. Corp.*, 271 F.3d at 506 (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

For *Ex Parte Young* to apply, a suit must seek both prospective relief and a remedy to an ongoing or continuing violation of federal law.  *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (holding that whether *Ex Parte Young* applied required a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective"); *Christ the King Manor, Inc. v. Sec'y of HHS*, 730 F.3d 291, 318–19 (3d Cir. 2013) (holding that *Ex Parte Young* only permits suits "that seek prospective relief to end an ongoing violation of federal law" and finding that in making these determinations, courts "must look to the substance rather than the form of the relief requested" (internal quotation marks and citations omitted)).

Here, Sinai's Complaint easily satisfies the *Ex Parte Young* exception to Eleventh Amendment immunity.  Sinai's Complaint does not only concern past violations of state and federal law.  Sinai alleges "an *ongoing* violation of federal law"—that State regulations conflict

with federal law permitting SNFs to use physical and chemical restraints so long as restraints are not used for punishment or convenience. And Sinai seeks relief properly characterized as prospective—injunctive and declaratory relief enjoining DOH from prohibiting SNFs from contracting with BOP to provide medical services to inmates who are subject to security restrictions. *Ex Parte Young* requires no more. *Verizon Md. Inc.*, 535 U.S. at 645.

Note, too, that the Court's straightforward *Ex Parte Young* inquiry does not extend to an analysis of whether injunctive relief is available in a particular case. "The inquiry into whether suit lies under *Ex Parte Young* does not include an analysis of the merits of the claim." *Id.* at 646. It is enough that Sinai "*seeks* relief properly characterized as prospective." *Id.* at 645 (emphasis added). "The prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies our 'straightforward inquiry.'" *Id.*

This Court also need not consider whether injunctive relief is ultimately available. *See id.* at 645–46. Relief is not properly characterized as prospective if Sinai seeks retroactive relief, such as monetary damages resulting from a past liability of the State. *See Verizon Md.*, 535 U.S. at 646. Notably, whether relief is properly characterized as prospective is a separate question from whether injunctive relief is warranted in a given case. Here, Sinai clearly seeks injunctive relief to prevent enforcement of an allegedly unconstitutional act. While a court may not award injunctive relief unless no adequate remedy at law exists, *Ex Parte Young* permits Sinai to seek it.

As such, all claims asserted against the Commissioner remain.

## B.    JOINDER [4]

The Commissioner next argues that Sinai's claims must be dismissed pursuant to Rule 12(b)(7) because Sinai failed to join CMS, BOP, and NaphCare—all parties the Commissioner contends are necessary and indispensable parties under Rule 19.  (Moving Br. at 11–19.)

### 1.    Legal Standard

To prevail on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7), the movant must show that the plaintiff has failed to join a party under Federal Rule of Civil Procedure 19.  Rule 19 states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If either clause (A) or (B) of Rule 19 is satisfied, "the absent party is a necessary party that should be joined if possible."  *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007).  First, the Court must determine whether the absent party is necessary to the action, then determine whether that party's joinder is feasible.  *Id.*  If a party's joinder is necessary, but not feasible, such that the party is indispensable to the case pursuant to Rule 19(b), then the action cannot move forward.  *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993).

---

[4] Note that Defendants did not include any joinder arguments in their pre-motion letter submitted to the Court (ECF No. 9), and the Court instructed Defendants to file their motion to dismiss, "limited to the arguments set forth in their letter" (ECF No. 11).  The parties are reminded not to circumvent this Court's directives in the future.  Nonetheless, under the circumstances, and in the absence of an objection from Plaintiff, the Court exercises its discretion to consider Defendants' joinder arguments.

For purposes of Rule 12(b)(7) analysis, the Court "must accept all factual allegations in [the Complaint] as true, but [is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citing *Schuykill Energy Res., Inc. v. Pa. Power & Light Co*, 113 F.3d 405, 417 (3d Cir. 1997) and *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (internal citations and quotations omitted).

        2.    <u>CMS</u>

The Commissioner argues that "disposing of this action in CMS's absence will impair its ability to adequately protect its interest." (Moving Br. at 11–16.) It is the Commissioner's position that "if this Court were to grant Plaintiff's requested relief, it would not only prohibit DOH from enforcing its applicable state laws, but also from fully carrying out its obligations to CMS under federal law." (*Id.* at 13.) In this instance, the Commissioner contends that CMS is a required party under: (1) Rule 19(a)(1)(A); (2) Rule 19(a)(1)(B)(i); and (3) Rule 19(a)(1)(B)(ii). (*Id.* at 11–16.) Nonetheless, the Commissioner fails to satisfy the burden under Rule 12(b)(7) on a number of bases.

First, this Court can accord complete relief among the existing parties. Courts "limit the Rule 19(a)(1) inquiry to whether the district court can grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial." *Gen. Refractories Co.*, 500 F.3d at 313 (emphasis in original) (citing *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996)); *Janney Montgomery Scott*, 11 F.3d at 405). The Commissioner admits that Sinai's challenge and requested relief is limited to the constitutionality of state law when applied to Sinai as a federal contractor. (Moving Br. at 11–12.) This is a narrowly tailored claim that attacks DOH's interpretation of the CMS Memo—not CMS's interpretation of its own memo. Such does not require mandatory joinder of CMS.

What's more, the Commissioner's arguments raise various fact questions that are inappropriate to resolve at the motion to dismiss stage.  Mainly, whether the requested relief will "prohibit DOH from fully executing its obligations to CMS in enforcing CMS's regulations" is speculative.  (*See id.* at 13.)  To support this argument, the Commissioner supplies a set of counter-facts that conflict with Sinai's allegations in the Complaint.  Pursuant to Rule 12(b)(7), the Court must accept all factual allegations in [the Complaint] as true"—not the Commissioner's counter-facts.  *Baraka*, 481 F.3d at 195.

Second, Rule 19(a)(1)(B) provides that, if feasible, an absent party must be joined to an action when "*that person claims an interest* relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest . . . ."  (emphasis added).  The Commissioner ignores the "claimed interest" clause of Rule 19.  *See Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) ("According to Rule 19's text, two conditions must be satisfied for a party to qualify as a 'required party' under Rule 19(a)(1)(B).  First, the party must 'claim[] an interest relating to the subject of the action.'  Second the party must be 'so situated that disposing of the action in the person's absence' may have one of the two consequences enumerated in Rule 19(a)(1)(B)(i) and (a)(1)(B)(ii)."  (citations omitted)).  The Commissioner does not contend that CMS claims an interest in this litigation—just that it has an interest.  (*See* Moving Br. at 13, 14) ("The requested relief would therefore infringe on CMS's interests if granted.") ("Plaintiff clearly attacks CMS's interests."); *see also U.S. for Use & Ben. of Special-Lite, Inc. v. Republic W. Sur. Co.*, No. Civ. 97-7400, 1998 WL 299674, at *3 (E.D. Pa. May 20, 1998) ("Defendant, who has the burden of showing that Town Supply is a necessary party, does not contend that Town Supply *claims* an interest in this litigation, merely that it *has* an interest."); *Incubadora Mexicana, SA de CV v.*

*Zoetis, Inc.*, 310 F.R.D. 166, 171–72 (E.D. Pa. 2015) ("With respect to subsection (a)(1)(B)(i), [movants] have failed to show that the absent . . . entities in fact 'claim an interest' in the subject of this litigation such that their interests need protecting."). Notably, CMS is not currently seeking to intervene and has not otherwise claimed any interest in the subject matter of this litigation.

Third, disposing of this action without joining CMS will not, as a practical matter, impair or impede CMS's ability to protect its interests because the Commissioner will adequately represent those interests. *See Owens-Illinois, Inc. v. LakeShore Land Co., Inc.*, 610 F.2d 1185, 1191 (3d Cir. 1979) ("The fact that the absent person may be affected by the judgment does not of itself require his joinder if his interests are fully represented by parties present."). Defendants offer no reason to believe that the Commissioner's interests are not in alignment with those of CMS. Defendants note that, if this Court were to grant Sinai's requested relief, "DOH would still be obligated to enforce the *parallel CMS guidelines*[.]" (Moving Br. at 13) (emphasis added.) The Commissioner admits that the at-issue New Jersey regulations (N.J.S.A. 26:2H-128 and N.J.A.C. 8:39-4.1) are nearly identical to CMS's guidance. To argue that CMS's interests would somehow not mirror those of the Commissioner's is nonsensical.

As the Commissioner has not established that CMS is necessary under Rule 19(a),[5] this Court need not address whether CMS is indispensable. *See In-Tech Mktg. Inc. v. Hasbro, Inc.*, 685 F. Supp. 436, 438 (D.N.J. 1988) ("Only if a [party] is deemed 'necessary' under Rule 19(a), must the court undertake the second step of the analysis.").

---

[5] Note that Defendants bear the burden of proof on this inquiry. *US Tech Sols., Inc. v. eTeam, Inc.*, Civ. No. 17-1107, 2017 WL 3535022, at *2 (D.N.J. Aug. 16, 2017) (citing *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011)). Defendants cited to two cases, neither of which are factually on point. As such, Defendants cannot meet the burden required for compulsory joinder of CMS.

3.      BOP and NaphCare

Defendants next argue that BOP and NaphCare are necessary parties, as Sinai "implicates the interests of both BOP and NaphCare such that disposing of this action without them would impair their ability to adequately protect their interests." (Moving Br. at 16–18) (internal citations omitted.)  Defendants again ignore that complete relief can be accorded among the existing parties. Fed. R. Civ. P. 19(a)(1)(A).  As previously stated, Sinai seeks injunctive relief to prevent the named Defendant—the Commissioner—from attempting to interfere and prohibit federal contractors from contracting to provide medical services to BOP inmates who are subject to security restrictions.  (Compl. ¶¶ 14, 16, 17–18.)  Sinai has not asked this Court to take any action against BOP or NaphCare.  If the requested relief is granted, Sinai would be able to resume its contract with NaphCare to service BOP inmates.  As such, both BOP and NaphCare's interests are adequately represented.

First, there is no showing that BOP or NaphCare have "claim[ed] an interest" relating to the subject of the action.  *See US Tech Sols, Inc.*, 2017 WL 3535022, at *3 (dismissing defendants' Rule 19(a)(1) claim because defendants "do not contend that the [a]bsent [p]arties *claim* an [sic] interest in this litigation, just that they *have* an interest").

Second, both BOP and NaphCare can communicate and assert their interpretation of the CMS Memo and relevant guidelines through discovery mechanisms without being a party to this litigation, and thus, based on the current record, Defendants have not shown that proceeding without BOP and NaphCare will "impair or impede [BOP and NaphCare's] ability to protect [their] interests." Fed. R. Civ. P. 19(a)(1)(B)(i).  The parties "have several options to ensure a complete record, including the use of a subpoena for documents and/or testimony." *Adams v. DMG Investments, LLC*, Civ. No. 21-17442, 2023 WL 158265, at *8 n.8; *see Retzlaff v. Horace Mann. Ins.*, 738 F. Supp. 2d 564, 570–71 (D. Del. 2010) ("It is possible to accord complete relief between

16

plaintiffs and [defendant] by compelling any information required from [the third party] through a subpoena or other compulsory processes.").

Again, as Defendants fail to establish that either BOP or NaphCare are necessary under Rule 19(a), this Court need not address whether either party is indispensable. *See In-Tech Mktg. Inc.*, 685 F. Supp. at 438 ("Only if a [party] is deemed 'necessary' under Rule 19(a), must the court undertake the second step of the analysis.").[6]

### C.    ISSUE PRECLUSION

Next, Defendants argue that Sinai is "collaterally estopped . . . from challenging DOH's factfinding violations against it" because Sinai failed to appeal DOH's Curtailment Order. (Moving Br. at 18.)[7] Sinai asserts that Defendants seek a premature evidentiary ruling and the only finding that could have preclusive effect is "the right of the BOP inmate patients to be free from any physical restraint." (Opp'n Br. at 25.)

"A federal court looks to the law of the adjudicating state to determine its preclusive effect." *Delaware River Port Auth. v. Fraternal Ord. of Police*, 290 F.3d 567, 573 (3d Cir. 2002) (citation omitted.) In New Jersey, issue preclusion, or collateral estoppel, "bars relitigation of any issue [] actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." *State v. Gonzalez*, 380 A.2d 1128, 1131 (N.J. 1977) (internal citations omitted). Under New Jersey law, the party asserting collateral estoppel must show:

> (1) The issue to be precluded is identical to the issue decided in the previous proceeding . . . (2) the issue was actually litigated in the prior action . . . (3) the court in the prior proceeding issued a final judgment on the merits . . . (4) the determination of the issue was essential to prior judgment . . . and (5) the party against whom the

---

[6] To the extent BOP and/or NaphCare seek to intervene, they are permitted to do so under the applicable Rules of Civil Procedure.
[7] Although Defendants challenge Sinai's actions under a collateral estoppel framework, Defendant's argument is arguably more akin to a failure to exhaust or a waiver argument.

doctrine is asserted was a party to or in privity with a party to the
earlier proceeding.

*In re Dawson*, 641 A.2d 1026, 1034–35 (N.J. 1994).

The Court's inquiry does not end with these five elements.  Collateral estoppel is an
equitable judicial doctrine and as such is "not to be applied if there are sufficient countervailing
interests." *Matter of Coruzzi*, 472 A.2d 546, 551 (N.J. 1984).  The Court will not preclude a party
litigating an issue when it would be "'unfair to do so.'"  *Allen v. V & A Bros.*, 26 A.3d 430, 444
(N.J. 2011) (internal citations omitted).  While New Jersey's collateral estoppel jurisprudence does
not mandate that courts permit equitable considerations to "overcome the ordinary preclusive
effects of prior judgments," *Gannon v. Am. Home Prod., Inc.*, 48 A.3d 1094, 1107 (N.J. 2012),
courts can rely on fairness considerations to inform the collateral estoppel analysis.  *See Olivieri
v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009–10 (N.J. 2006).

In their filing, Defendants included a copy of DOH's Curtailment of Admissions and
Readmissions Order dated July 23, 2024 (the "Curtailment Order").  (*See* Moving Br., Ex. A.)  In
the Curtailment Order, the Director of Program Compliance, Division of Certificate of Need and
Licensing indicated that: "Sinai may request a hearing to challenge any or all of the following: *the
factual survey findings* and/or *the curtailment*."  (*Id.* at 3) (emphasis added.)  The Curtailment
Order noted that "Sinai is entitled to contest the curtailment, pursuant to N.J.S.A. 26:2H-14." (*Id.*)

N.J.S.A. 26:2H-14 reads, "[i]f a licensee that is subject to summary suspension shall *deny
that a violation exists or has occurred*, he shall have the right to apply to the commissioner for a
hearing." (emphasis added).  Sinai, however, does not dispute that relevant CMS and state law
requirements were violated.    Instead, Sinai challenges whether such requirements are
constitutional in light of BOP's exclusive control over federal inmates.  This inquiry: (1) is not
identical to the issue decided in the Curtailment Order; (2) was not actually litigated in the

18

administrative proceeding (nor could it be); (3) did not receive a final judgment on the merits—as there was no hearing in connection with the Curtailment Order; and (4) was not even considered in (let alone essential to) the Curtailment Order.

Thus, the constitutionality of State requirements was not "actually determined" in the administrative proceedings. *See Gonzalez*, 380 A.2d at 1131. As such, Defendant's request to impose collateral estoppel is denied.

### D.    EQUAL PROTECTION

Next, Defendants contend that Sinai's equal protection claim fails because Sinai lacks standing to plead a viable equal protection claim. (Moving Br. at 19–26.)

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Here, Sinai does not allege that it fits within a protected class. (Opp'n. Br. at 21.) Instead, Sinai appears to allege that DOH treated Sinai differently than other hospitals and post-acute treatment facilities that treat BOP inmate patients from other correctional facilities. (*See id.* at 23.)

In some cases, an equal protection claim can be sustained where a plaintiff does not allege that it is a member of a protected class, but rather "claims that [it] has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dept. of Agr.*, 553 U.S. 591, 601 (2008); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). To state an equal protection claim under a class of one theory, a plaintiff must show: "(1) the Defendant treated [plaintiff] differently from others similarly situated; (2) the Defendant did so intentionally; and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Entities "are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 203 (3d Cir.

2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  Thus, at the pleading stage, plaintiffs must adequately allege that they are alike in all relevant respects and must offer more than conclusory assertions.  *Twombly*, 550 U.S. at 555.

Sinai does not allege that it was treated differently from others similarly situated.  In fact, the Court cannot intuit who "others similarly situated" may be.  If Sinai is alleging that DOH treated Sinai differently from other State SNFs that treat BOP inmate patients, Sinai does not do so with the requisite particularity required.  In fact, Sinai does not identify any other similarly situated entities.  Furthermore, Sinai does not allege that other similarly situated SNFs or facilities engaged in the same putative conduct against BOP inmates.  Sinai does not plead the "how and why" it is similarly situated to other SNFs or facilities, "other than that they all supposedly merely treated inmate patients."  (Reply Br. at 8.)  All Sinai offers is conclusory statements.  Sinai alleges that "[w]ithout development of a factual record, it is impossible to conclude that [Defendants'] actions were rational."  (Opp'n. Br. at 23.)  Sinai fleetingly suggests that Defendants' "true motivation for targeting and sanctioning Sinai" may have been irrational (or even sinister) but provides no support for this conclusory allegation.  In fact, the Complaint offers a rational basis for DOH's application of state regulation—"to ensure that the . . . BOP inmate patients were provided *the same rights as all other residents residing at Sinai*."  (Compl. ¶ 64) (emphasis added); *see also Aulisio v. Chiampi*, 765 F. App'x 760, 765 (3d Cir. 2019) ("Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim.").

For these reasons, the Court concludes that Sinai does not allege any facts indicating that its treatment lacked rational basis and that its equal protection claim cannot succeed on a "class of one" theory. Accordingly, Count III of the Complaint will be dismissed without prejudice.[8]

### E.     SINAI'S REMAINING CLAIMS – FEDERAL PREEMPTION OF STATE LAW AND VIOLATION OF INTERGOVERNMENTAL IMMUNITY AND SUPREMACY CLAUSE

Finally, Defendants challenge Sinai's two remaining claims against the Commissioner: (1) federal preemption of state law; and (2) violation of the Intergovernmental Immunity and Supremacy Clause. (Moving Br. at 26–40.) Because federal preemption doctrine and intergovernmental immunity doctrine are intertwined, the Court addresses Defendants' arguments together.

"Our Constitution created a legal system 'establishing two orders of government, each with its own direct relationship, its own privity, its own set of mutual rights and obligations to the people who sustain it and are governed by it.'" *CoreCivic. Inc. v. Governor of N.J.*, 145 F.4th 315, 320 (3d Cir. 2025) (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838 (1995) (Kennedy, J., concurring)). When those two orders conflict, the Supremacy Clause makes federal law "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. From the Supremacy Clause stems two doctrines: preemption and intergovernmental immunity. Although these two doctrines originate from the same source, they "stand on different constitutional footing" and "are implemented through different tests." David S. Rubenstein, *State Regulation of Federal Contractors: Three Puzzles of Procurement Preemption*, 11 UC Irvine L. Rev. 207, 217 (2020).

---

[8] If Sinai is instead attempting to assert an equal protection claim on behalf of BOP federal inmate patients (or even non-inmate patients), it cannot do so. *See Powers v. Ohio*, 499 U.S., 400, 410 (1991) (A litigant "must assert [its] own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.").

1.     <u>Preemption</u>

Congress can preempt state law either expressly or impliedly.  *See Arizona v. United States*, 567 U.S. 387, 399–401 (2012).  Congress expressly preempts a state law when it enacts a federal statute that explicitly prohibits state jurisdiction over a particular subject.  *Id.* at 399 (citing *Chamber of Com. v. Whiting*, 563 U.S. 582, 590 (2011)).  Comparatively, Congress can impliedly preempt state law in one of three ways: (1) field preemption; (2) obstacle preemption; or (3) impossibility preemption.  *Id.* (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990); *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *Fla. Lime & Avocado Growers. Inc. v. Paul*, 373 U.S. 132, 142–43 (1963)).

Federal agencies can also preempt state law.  *See City of New York v. FCC*, 486 U.S. 57, 63–64 (1988) (holding that a "federal agency acting within the scope of its congressionally delegated authority may preempt" state law); *Hillsborough Cnty. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 713 (1985) ("[S]tate laws can be pre-empted by federal regulations as well as by federal statutes").  Additionally, a state law that directly conflicts with or frustrates the purposes of a federal agency's regulatory scheme may be impliedly preempted.  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000) (finding state law was preempted because it frustrated the purpose of the agency's regulatory scheme).

The Supreme Court has also recognized the "government contractor defense," which provides an avenue for federal contracts to preempt conflicting state law.  *Boyle v. United Techs. Corp.*, 487 U.S. 500, 511–12 (1988).

In every preemption case, the court's inquiry is guided by two principles.  *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010).  First, "the purpose of Congress is the ultimate touchstone in every pre-emption case."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotations omitted).  Second, courts "start[ ] with the basic assumption that Congress did not intend to

displace state law." *Farina*, 625 F.3d at 115 (alteration in original) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

### a.    Presumption Against Preemption

First, the Commissioner argues that Sinai cannot overcome the presumption against preemption. (Moving Br. at 32–33.) "In all preemption cases, and particularly in [fields] the States have traditionally occupied," a state's police powers are "not to be superseded . . . unless that was the clear and manifest purpose of Congress." *Medtronic, Inc.*, 518 U.S. at 485 (internal marks and citations omitted). This presumption against preemption may be overcome by clear evidence of Congress's express or implied intent to preempt state law. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663–64 (1993) ("In the interest of avoiding unintended encroachment on the authority of the States . . . a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption.").

While patient care at state SNFs may in fact fall squarely within the State's traditional police power, regulation of federal inmates likely does not. In the Complaint, Sinai asserts that Congress mandated the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States to BOP. (*See* Compl. ¶ 80.) Sinai also alleges that the Commissioner's "interfere[nce] with the custody decisions made by . . . BOP" "frustrates Congressional intent to delegate the safekeeping and care and subsistence of, as well as security and control of, BOP inmates to . . . BOP." (*Id.* ¶¶ 85, 86.) These allegations are sufficient to adequately plead preemption at the motion to dismiss stage.

### b.    Conflict Preemption

Next, the Commissioner argues that Sinai has not shown that preemption is proper under either conflict or field preemption. (Moving Br. at 33–40.)

Conflict preemption exists where either "it is impossible for a private party to comply with both state and federal requirements" or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Farina*, 625 F.3d at 122. One subtype of conflict preemption is obstacle preemption, which arises when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (quoting *Hines*, 312 U.S. at 67).

Sinai alleges that the challenged state regulations conflict with federal law and "present a substantial obstacle to the purposes of Congress in delegating authority to . . . BOP." (Compl. ¶ 84.) The Commissioner argues that Sinai has not shown that any genuine conflict exists between the Commissioner and the federal government "when DOH acted consistently with and on behalf of another branch of the Federal Government—CMS." (Moving Br. at 34.) The Commissioner asserts that CMS "supports the application here of DOH, its federal contractor as per federal authority." (*Id.*) This may be true. CMS may support DOH's similar—but not identical— regulations.[9] However, the Commissioner misses the mark. Sinai alleges that New Jersey regulations conflict with regulations pertaining to BOP's authority as to federal inmates—not that CMS's regulations directly conflict with the State's.

The Commissioner then argues that Sinai has not shown that "either state law or Defendant[] 'present a substantial obstacle' to Congress's purposes." (*Id.* at 34.) However, "[w]hat is a sufficient obstacle is a matter of judgment, to be informed by examining the federal

---

[9] The Commissioner argues that, because federal CMS regulations overlap with State regulations, such "does not even begin to make a case for conflict preemption," and cites to *Kansas v. Garcia*, 589 U.S. 191. 211 (2020). (Moving Br. at 35.) *Garcia* concerned a preemption challenge to a state provision criminalizing unauthorized aliens from using fraudulent identities on tax forms. However, as the Supreme Court explained, "there is no basis for inferring that federal criminal statutes preempt state laws whenever they overlap." *Garcia*, 589 U.S. at 212. Here, the facts are different. Sinai alleges that state regulations conflict with federal law governing the care of federal inmates; state and federal criminal statutes are not in play.

statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

This Court simply cannot perform that examination at this stage of the litigation. Congress may have conferred authority to CMS to oversee SNFs, but Congress also conferred authority to BOP to have exclusive control over BOP federal inmates. A closer examination of the relevant federal law in play here is warranted.

c.      *Field Preemption*

The second type of implicit preemption is field preemption. Field preemption arises when "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 526 (1992) (citing *Fid. Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153 (1982)).

The Commissioner insists that Congress "never delegated authority to BOP to regulate all non-federally-owned SNFs that it chooses to send inmate patients to for medical treatment." (Moving Br. at 38–39.) The Commissioner argues that Congress authorized CMS to govern SNF residents' rights and that "neither Congress nor BOP has evinced an intent to occupy the *entire* field of SNFs like Sinai for BOP purposes. (*Id.* at 39) (emphasis in original.)

While it may be true that neither Congress nor BOP intend for BOP to occupy the entire field of SNFs for BOP purposes, Sinai alleges that only BOP has the authority to make decisions regarding federal inmates' detention parameters. The at-issue regulations thus impede upon BOP's exclusive authority by forbidding BOP from controlling inmates' detention parameters. The Commissioner provides no caselaw to disprove Sinai's argument on this point. Instead, the Commissioner argues that DOH was given exclusive control over all SNFs within the State. The

Commissioner's failure to dispute that BOP has exclusive control over BOP federal inmates and their detention parameters does not warrant dismissing Sinai's claim.

### 2. Intergovernmental Immunity

The Intergovernmental Immunity Clause originates from *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 425–37 (1819). In that seminal case, the Court explained: "[T]here is a plain repugnance" in letting states "interfer[e] with or control[ ] the operations of the Federal Government." *McCulloch*, 17 U.S. at 431; *see also United States v. Washington*, 596 U.S. 832, 838 (2022). "[T]he very essence of supremacy" empowers the federal government to "remove all obstacles to its action within its own sphere . . . [and] exempt its own operations from [state] influence." *McCulloch*, 17 U.S. at 427.

After *McCulloch*, the Intergovernmental Immunity Clause evolved. Under the modern doctrine, states cannot: (1) directly regulate the federal government; or (2) discriminate against the federal government or its contractors. *See North Dakota v. United States*, 495 U.S. 423, 436 (1990); *South Carolina v. Baker*, 485 U.S. 505. 516–23 (1988) (discussing evolution of the doctrine).

State laws that directly regulate the federal government are constitutionally forbidden. *See North Dakota*, 495 U.S. at 439 ("Congress has the power to confer immunity from state regulation on Government suppliers beyond that conferred by the Constitution alone . . . ."); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 176 (1988) ("It is well settled that the activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation."). Additionally, state law cannot "discriminate" against the federal government "or those with whom it deals." *See. e.g., North Dakota*, 495 U.S. at 438; *Baker*, 485 U.S. at 523. This Court is to assess the state regulatory

scheme wholistically—a state law that may appear nondiscriminatory in isolation may actually be discriminatory when taken in context. *See North Dakota*, 495 U.S. at 438.

Defendants claim that Sinai fails to state a valid claim for violation of the Intergovernmental Immunity Clause. (Moving Br. at 26–31.) The Commissioner asserts that the state regulations at issue are facially neutral and therefore cannot discriminate against the federal government or its subcontractors. (*Id.* at 26.) Furthermore, the Commissioner argues that DOH could not have violated the Intergovernmental Immunity Clause because the challenged state regulations were an exercise of federal authority delegated to it by CMS. (*Id.* at 27–29.)

First, the Commissioner's delegation of federal authority argument falls flat. Although the Commissioner is correct that DOH contracts "with the DHHS Secretary to ensure compliance with" various CMS regulations, it ignores the fact that Sinai is challenging the Commissioner's application of state law, not a CMS regulation. (*Id.* at 27, 28.) For instance, the Commissioner indicates that DOH's contract with the DHS Secretary requires DOH "to ensure that SNFs maintain compliance with . . . § 1395i–3(c) [which] enumerates SNF residents' rights, including inter alia the right to be free from involuntary seclusion and physical restraints, as well as the right to participate in activities." (*Id.* at 28.) Sinai is not challenging DOH in its capacity as a so-called "federal contractor"—it is challenging DOH's exercise of state regulation. And, although the Commissioner claims this constitutes "a scenario plainly not protected by the doctrine of intergovernmental immunity," the Commissioner fails to cite to any caselaw that stands for this "plain" scenario. (*Id.* at 28–29.) This claim is hardly the "ouroboros" that Defendants perceive (*Id.* at 28.)

Second, the Commissioner argues that Sinai cannot allege discriminatory application of state law because DOH's action was predicated on violations of federal law. (*Id.* at 29–30.) The

Commissioner argues that "the violations identified and enforced against Plaintiff in the Curtailment Order feature overlapping federal and state requirements that were violated." (*Id.* at 29.)   Note, though, that the Commissioner identifies and enforced both federal and state requirements—and that these two buckets of requirements "overlap" and "substantially mirror" the other, but they are not identical.

Third, the Commissioner asserts that Sinai's claim still fails because the challenged state regulations "are . . . both facially neutral laws that were consistent with CMS requirements and were applied neutrally to all SNFs equally to 'each resident,' regardless of whether they provide post-acute care to BOP inmates." (*Id.* at 30–31.)   While, yes, the plain text of the challenged state regulations may not explicitly discriminate against the federal government and may even appear to be neutral, Sinai alleges otherwise.   *See North Dakota*, 495 at 438.   Sinai argues that the state regulations "provide the State of New Jersey, through the DOH, an improper power of review over BOP's actions with respect to inmates under [its] control, and effectively prohibits the Federal Government from supervising the inmates under their control and from contracting as it deems appropriate." (Compl. ¶ 96.)   As Sinai alleges, "Congress has not authorized any State to regulate the BOP's Congressional mandate . . . to provide . . . for the safekeeping[ ] and care and subsistence of all persons charged with or convicted of offenses against the United States in conformance with the United States Constitution." (*Id.* ¶ 93.)

Sinai focuses on *CoreCivic. Inc. v. Murphy*, 690 F. Supp. 3d 467 (D.N.J. 2023) in its opposition brief. (*See* Opp'n Br. at 9–11.)   In that case, a New Jersey state law prohibited private contractor CoreCivic from renewing its contract to provide detention for United States Immigration and Customs Enforcement ("ICE") detainees.   *Id.* at 472–73.   The District Court determined that the federal government has "broad, undoubted power over the subject of

immigration and the status of aliens." *Id.* at 471.  Additionally, the District Court noted that although a state typically has the authority to address health and safety issues, that fact alone is insufficient to preclude preemption.  *Id.* at 487–88 ("[T]he only laws governing immigration are federal laws, and the only sovereign able to detain individuals for violating federal immigration laws is the federal government. . . . [R]egulating the health and safety of individuals detained for violating federal law is not an area the states have traditionally occupied.").  In July, the Third Circuit affirmed the District Court's opinion.[10]  *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025).

This Court finds the Circuit's opinion in *CoreCivic, Inc.* controlling.  *CoreCivic, Inc.* was decided on a motion for summary judgment, not a motion to dismiss like the motion here.  Sinai alleges that the at-issue state regulations venture into territory that was delegated to BOP.  And, while issues regarding health and safety usually fall within the State's purview, the parameters of a federal inmate's detention do not.  *See Yosuf v. United States*, 642 F. Supp. 415, 427 (M.D. Pa. 1986) (BOP "has a duty to provide adequate medical care to a prisoner"); 18 U.S.C.A. § 4042. Sinai alleges that BOP does not share this duty with any other federal agency.  (Compl. ¶ 16.) Such is sufficient to survive a motion to dismiss.

---

[10] Neither the Commissioner nor Sinai brought the Third Circuit's opinion to this Court's attention.

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' Motion to Dismiss.  All claims against DOH will be dismissed without prejudice.  Plaintiff's claim for violation of the Equal Protection Clause (Count III) will be dismissed without prejudice as to all parties.  Plaintiff will be granted leave to amend the Complaint within 30 days, limited to addressing the deficiencies in its Complaint with respect to its claims for violation of the Equal Protection Clause.  An appropriate Order will follow.

Date: September 30, 2025

<u>s/ Zahid N. Quraishi</u>
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**